IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | NO. 3:99-cr-00033 |
| v. | ) | |
| | ) | JUDGE RICHARDSON |
| | ) | |
| ALVIN LEWIS | ) | |

**MEMORANDUM OPINION**

More than two decades ago, this Court sentenced Defendant Alvin Lewis to serve seven years in prison. He has not yet completed that sentence. Beginning in 2003, Defendant absconded from prison for more than eighteen years. He returned to prison in November 2021—not voluntarily, but only after being recaptured by law enforcement.

Now, Defendant has filed a Motion for Compassionate Release Due to Age and Deteriorating Health (Doc. No. 145, "Motion"), wherein he asks the Court to exercise its discretion to grant the extraordinary remedy of compassionate release because Defendant is now in his mid-sixties and suffering from health problems related to "mini-strokes." The Government opposes Defendant's request for compassionate release and has filed a Response in Opposition. (Doc. No. 151). Defendant has filed a Reply (Doc. No. 168) and the Government has filed a Surreply (Doc. No. 173). The Court has thoroughly reviewed all of the parties' submissions, and the Motion is now ripe for disposition. For the reasons that follow, the Court will deny the Motion based on the Court's discretionary balancing of the 18 U.S.C. § 3553(a) factors.

BACKGROUND

In 1999, a jury convicted Defendant on twelve counts relating to the manufacture and sale of unauthorized devices used to pirate satellite television without paying a subscription fee. *See*

*United States v. Lewis*, 296 F.3d 487, 488–91 (6th Cir. 2002).[1] Judge Thomas A. Higgins of this Court sentenced Defendant to 72 months' imprisonment and ordered Defendant to self-report on November 1, 1999 to begin serving his sentence. (Doc. No. 73). On October 28, 1999, shortly before Defendant was due to self-report, he filed a motion seeking a 30-day extension of his self-report date. (Doc. No. 83). Judge Higgins denied that motion the following day. (Doc. No. 85).

Nonetheless, Defendant failed to report on November 1, 1999 to begin serving his sentence as this Court had ordered. (*See* Doc. Nos. 88–91). United States Marshals were instead forced to retrieve Defendant from Pensacola, Florida, to which he had fled. Defendant was indicted for failure to surrender to serve a sentence of imprisonment. *See United States v. Alvin Lee Lewis*, M.D. Tenn. Case No. 3:00-cr-00002, Doc. No. 7. He pled guilty to that additional charge and, on April 14, 2000, Judge Higgins sentenced Defendant to an additional twelve months and one day's imprisonment, to run consecutively to the sentence previously imposed in this case. (Case No. 3:00-cr-00002, Doc. Nos. 14, 15, 23). Thus, Defendant's total sentence of imprisonment between the two cases was 84 months (*i.e.*, seven years) and one day.

Given that Defendant was sentenced to seven years in prison more than twenty years ago, one naturally might wonder why his request for compassionate release is before the Court today. The answer is that, beginning in April 2003, Defendant (once again) absconded from prison, this

---

[1] Defendant "was convicted of manufacturing and selling unauthorized access devices and conspiracy to do so, in violation of 47 U.S.C. § 605(e)(4) & 18 U.S.C. § 371; manufacturing and selling and interstate transportation of surreptitious interception devices, in violation of 18 U.S.C. §§ 2512(1)(a) & (b); fraud by use of commercial interstate carrier, in violation of 18 U.S.C. § 1341; wire fraud, in violation of 18 U.S.C. § 1343; money laundering and conspiracy to launder money, in violation of 18 U.S.C. §§ 1956(h) & (a)(1)(A)(i); and aiding and abetting as to all of the non-conspiracy counts, in violation of 18 U.S.C. § 2." *Lewis*, 296 F.3d at 489 n.1.

time for nearly eighteen years.[2] In April 2003, the Government—despite already having been fooled once—decided to furlough Defendant from the Federal Correctional Institution at Memphis, where he had served the first portion of his sentence, and directed Defendant to self-report to the Federal Correctional Institution at Lompoc, California ("FCI Lompoc"), three days later to serve the remainder of his sentence closer to family. (*See* Doc. No. 151-2). The Government's trust—perhaps quixotic even at the time—was not repaid. Defendant did not report to FCI Lompoc. Instead, he remained a fugitive until November 2021, and was recaptured only when officers from the San Bernardino County Sheriff's Department (whom Defendant had called to report a potential burglary) discovered that there was a federal felony arrest warrant for Defendant and took him into custody. (Doc. No. 151-4).

Although Defendant was charged in the United States District Court for the Central District of California with escaping from prison in violation of 18 U.S.C. § 751, the Government subsequently dismissed that charge (Doc. Nos. 151-6, 151-7), meaning that Defendant's eighteen-year intermission did not result in any increase to his sentence. Since November 2021, Defendant has been serving the remainder of his original 84-month sentence and is currently projected to be released in March 2024. *See* Inmate Locator, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last accessed Oct. 12, 2022). Defendant is currently incarcerated

---

[2] Defendant's Motion never reveals that Defendant absconded from prison. Instead, the Motion includes only the cryptic statement that Defendant's service of his sentence "was interrupted." (Doc. No. 145 at 1). (Defendant does briefly address the fact of his escape in his Reply, Doc. No. 168 at 1, but this came only after the Government's filing set forth the full details of Defendant's conduct.) The Court would caution counsel that hiding the ball in this way is generally not effective advocacy. Counsel would have been better served by openly acknowledging Defendant's problematic conduct and attempting to explain it as best as possible, rather than by referring to Defendant's escape from prison only in passing via an oblique euphemism.

in California at FCI Lompoc.[3] *See id.*; Doc. No. 166 at 2.

On April 6, 2022, Defendant filed the instant Motion, seeking compassionate release under 18 U.S.C. § 3582(c)(1). Via the Motion, Defendant requests that the remainder of his sentence (now approximately seventeen months) be terminated and that he be released immediately (Doc No. 145 at 3).[4]

## LEGAL STANDARD

Prior to 2018, only the Director of the Bureau of Prisons ("BOP") could move for compassionate release. The First Step Act amended 18 U.S.C. § 3582(c) to allow prisoners to move for compassionate release on their own behalf. *See* First Step Act of 2018, Pub. L. No. 115-391, § 603, 132 Stat. 5194, 5239. In relevant part, § 3582(c) now provides:

> The court may not modify a term of imprisonment once it has been imposed except that . . . the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with

---

[3] The parties do not dispute that this Court, as the court that rendered Defendant's sentence, is the appropriate venue for a compassionate-release motion, even though Defendant is now incarcerated outside this district. *United States v. Raia*, 954 F.3d 594, 596 (3rd Cir. 2020) (stating that 18 U.S.C. § 3582 "requires [compassionate-release] motions to be addressed to the sentencing court"); *United States v. Powell*, No. 07-20440, 2022 WL 1274384, at *1 (E.D. Mich. Apr. 28, 2022) ("The sentencing court is the proper venue for a motion for compassionate release."); *Barrett v. Carvajal*, No. 4:20-cv-937, 2020 WL 2496920, at *3 (N.D. Ohio May 14, 2020) (stating that "only the original sentencing court can entertain" a request for compassionate release); *Heard v. Quintana*, 184 F. Supp. 3d 515, 521 (E.D. Ky. 2016) ("because a compassionate release falls under 18 U.S.C. § 3582 . . . the process must be undertaken in the court where the prisoner was sentenced"); *see also United States v. Richardson*, 948 F.3d 733, 749 (6th Cir. 2020) ("In 18 U.S.C. § 3582(c), Congress provides that *a sentencing court* 'may not modify a term of imprisonment once it has been imposed' except under certain circumstances.") (emphasis added).

[4] Defendant also suggests that, even if the Court were to grant his immediate release, a supervised-release condition of home confinement might be appropriate. (Doc. No. 168 at 4).

applicable policy statements issued by the Sentencing Commission . . . .[5]

As the statutory text makes clear, in order to grant a motion for compassionate release filed by a defendant (hereinafter, "defendant-filed motion"), a court must find that the so-called "exhaustion requirements" have been satisfied—*i.e.*, either "the defendant has fully exhausted all administrative rights to appeal a failure of [BOP] to bring a motion [for compassionate release] on the defendant's behalf," or there has been a "lapse of 30 days since the receipt of such a request [for BOP to file such a motion] by the warden of the defendant's facility, whichever is earlier." *Id.*; *see also United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) (explaining that a district court may not disregard the exhaustion requirement of § 3582(c)(1)(A) if properly invoked by the Government).

If the exhaustion requirement is met, the district court proceeds to apply a three-step test. *United States v. Jones*, 980 F.3d 1098, 1107–08 (6th Cir. 2020); *United States v. Ruffin*, 978 F.3d 1000, 1004–05 (6th Cir. 2020). At step one, the court must determine whether a sentence reduction is warranted by "extraordinary and compelling reasons." *Jones*, 980 F.3d at 1107–08; 18 U.S.C. § 3582(c)(1)(A)(i). At step two, the court must determine whether "such a reduction is consistent with *applicable* policy statements issued by the Sentencing Commission." *Jones*, 980 F.3d at 1108; 18 U.S.C. § 3582(c)(1)(A). In *Jones*, the Sixth Circuit held that the Sentencing Commission's policy statement on compassionate release, United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13, is not "applicable" to defendant-filed motions because it was drafted with only BOP-

---

[5] Section 3582(c)(1)(A)(ii) provides an alternative route under which the district court may grant a compassionate-release motion if, among other things, "the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g)." Defendant does not seek release under this provision, and any such request would fail because (among other things) he is younger than 70 years of age.

filed motions in mind. 980 F.3d at 1110–11.[6] Accordingly, "[i]n cases where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Id.* at 1111; *see also United States v. Inman*, 583 F. Supp. 3d 1117, 1121 (M.D. Tenn. 2022) ("[B]ecause § 1B1.13 is inapplicable to defendant-filed motions, a district court adjudicating such a motion is not bound by anything § 1B1.13 has to say about—including any limitations or requirements § 1B1.13 would impose upon—the finding of extraordinary and compelling reasons.").

Finally, at step three, the court "consider[s] any applicable [18 U.S.C.] § 3553(a) factors and determine[s] whether, in its discretion, the reduction authorized by steps one and two is warranted in whole or in part under the particular circumstances of the case." *Jones*, 980 F.3d at 1108 (brackets omitted) (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)).

District courts "may deny compassionate-release motions when any of the three [or two, in defendant-filed motions] prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others." *United States v. Navarro*, 986 F.3d 668, 670 (6th Cir. 2021) (quoting *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021)). Thus, district courts may deny compassionate-release motions by "skipping right to the § 3553(a) factors." *Id.* (citing *Elias*, 984 F.3d at 519).

It bears emphasis that a district court *may*—not *must*—grant a defendant-filed motion if the test described above is satisfied. *See Jones*, 980 F.3d at 1106 ("Congress's use of 'may' in § 3582(c)(1)(A) dictates that the compassionate release decision is discretionary, not

---

[6] Prior to *Jones*, this Court treated § 1B1.13 as applicable to all motions for compassionate release, whether filed by BOP or by a defendant. The Court does not necessarily perceive that such treatment resulted in a resolution of any defendant-filed motions that was any different than the result the Court would have reached by treating § 1B1.13 as inapplicable to defendant-filed motions. But the Court does note that at least the analytical framework it used prior to *Jones* was different than the analytical framework called for in the aftermath of *Jones*.

mandatory."). The district court retains "substantial discretion" in making the compassionate-release determination, and that determination is reviewed on appeal for abuse of discretion. *Ruffin*, 978 F.3d at 1005.

DISCUSSION

I.      Exhaustion of Administrative Remedies

The threshold issue of exhaustion is uncontested in this case. On February 25, 2022, Defendant sent an email to the Warden of Metropolitan Detention Center, Los Angeles ("MDC Los Angeles"), where he was housed at the time, requesting compassionate release. Defendant attached this email to his Motion. (Doc. No. 145-4). The Warden responded by email on April 8, 2022, denying Defendant's request. (Doc. Nos. 154, 154-1). Although Defendant has since been moved from MDC Los Angeles to FCI Lompoc, the Government agrees that Defendant "appears to have satisfied the exhaustion requirement" based on his February 25 email. (Doc. No. 151 at 18). Because the exhaustion requirement for compassionate-release motions is not jurisdictional, *Ruffin*, 978 F.3d at 1004, the Court may (and does) accept the Government's concession that the exhaustion requirement is satisfied here. *See Jones*, 980 F.3d at 1102 n.5 ("The Government does not contest exhaustion, so we can proceed with the understanding that [defendant] satisfied exhaustion here.").

II.     Extraordinary and Compelling Reasons

Turning to the merits, Defendant's sole argument as to why the Court should grant his request for compassionate release is that he purportedly meets the criteria set forth in U.S.S.G. § 1B1.13, cmt. n.1(B), in that he (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his term of imprisonment, whichever is less. Defendant argues that he

satisfies all three of these requirements because (i) he was born in 1955 and is presently 66 years old; (ii) he suffers from diabetes, hypertension, and cardiac artery stenosis, which have resulted in several "mini-strokes" causing slurred speech, stumbling, falling, and loss of cognitive functioning; and (iii) as of September 2022, he has served 75 percent of his sentence assuming that he earns all good time credit available to him. (Doc. Nos. 145 at 1–3, 168 at 1–3).

The parties dispute whether the evidence in the record supports a finding that Defendant's medical conditions constitute a "serious deterioration in physical or mental health because of the aging process" as contemplated by U.S.S.G. § 1B1.13, cmt. n.1(B). Defendant relies on two sworn declarations submitted by fellow inmates stating that they personally observed the health conditions of which he complains. (Doc. Nos. 145-1, 145-2). The Government argues that these declarations should be discounted because they appear to be handwritten by the same person, contain similar descriptions of Defendant's health conditions, and the inmates who signed the declarations were both convicted of fraud offenses. (Doc. No. 151 at 22–23). Defendant also relies on several emails that he sent to the Warden and physician of MDC Los Angeles between February 25, 2022, and March 3, 2022, complaining of suffering from strokes. (Doc. Nos. 145-3, 145-4).[7] The Government points to inconsistencies in these emails and between these emails and the two inmate declarations. (Doc. No. 151 at 23–26).

Defendant and the Government have also filed under seal copies of Defendant's BOP medical records up through August 12, 2022. (Doc. Nos. 144-1, 150, 170-1). The Government

---

[7] Defendant also states in his email to the Warden that he contracted COVID-19 in December 2021. (Doc. No. 145-4). Defendant does not argue that his risk of contracting COVID-19 again is a basis for compassionate release, perhaps because it appears from records submitted by the Government that Defendant declined to be vaccinated against COVID-19. (Doc. No. 151-8). *See United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021) ("a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction").

contends that these records show that Defendant has received appropriate medical treatment in prison—including a prescription for medication designed to prevent further strokes, which the Government says has so far succeeded—and that accordingly Defendant's medical condition is not "deteriorating drastically" as he alleges. (Doc. No. 151 at 26–30). The Government also argues that Defendant reported having previous strokes when he was not in BOP custody for which he did not seek or obtain medical care, and that Defendant has therefore not explained why he would be more likely to receive appropriate medical care if released than he would receive in prison. (*Id.* at 30–31). Defendant, for his part, contends that a neurologist who examined Defendant while he was still at MDC Los Angeles recommended that he receive MRIs and a transthoracic echocardiogram ("TTE"). Defendant argues that these examinations were scheduled for July 2022, but that BOP moved Defendant (ultimately to FCI Lompoc) before the examinations could be completed, and that BOP now refuses to reschedule the MRIs and TTE. (Doc. No. 168 at 2–3). The Government does not appear to dispute these claims but argues that Defendant is nonetheless receiving adequate medical treatment at FCI Lompoc, including medication designed to control his conditions. (Doc. No. 173 at 1–3).

Ultimately, the Court need not (and does not) resolve the factual disputes between the parties regarding Defendant's medical condition and medical treatment. For one thing, it is not crucial whether Defendant satisfies the requirements of U.S.S.G. § 1B1.13, cmt. n.1(B). That is because, as noted above, U.S.S.G. § 1B1.13 is not an "applicable" policy statement of the Sentencing Commission with respect to defendant-filed motions. The Court thus has "full discretion" irrespective of § 1B1.13 "to determine whether an 'extraordinary and compelling' reason justifies compassionate release" when considering a defendant-filed motion such as this one. *Jones*, 980 F.3d at 1109.

Moreover (and as also noted above), the Court may skip directly to an analysis of the § 3553(a) factors and deny relief on that basis, regardless of whether Defendant has shown "extraordinary and compelling" reasons supporting his release. *Navarro*, 986 F.3d at 670; *see also Ruffin*, 978 F.3d at 1008 ("district courts may deny relief under the § 3553(a) factors even if 'extraordinary and compelling' reasons would otherwise justify relief"). Here, the Court has serious doubts as to whether "extraordinary and compelling" reasons exist. Defendant's sole argument is based on his age (66 or 67 years old) and declining health. Had Defendant not absconded for more than eighteen years, however, he would have finished serving his sentence in approximately 2006 when he was 51 years old (or possibly even earlier with good time credit). The Court is highly skeptical that "extraordinary and compelling" reasons exist within the meaning of the statute when a defendant continues to serve his sentence above age 65 only because he escaped from prison when he was 47 years old and evaded recapture until age 65.

But the Court ultimately need not resolve that issue here. Even assuming for the sake of argument that Defendant's age, health condition, and the percentage of his sentence already served constitute "extraordinary and compelling" reasons to grant compassionate release, the Court will, in its discretion, deny Defendant's Motion based on its analysis of the § 3553(a) factors, as explained in the next section.

III. <u>Section 3553(a) Factors</u>

The sentencing factors set forth in 18 U.S.C. § 3553(a) are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—
   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   (B) to afford adequate deterrence to criminal conduct;
   (C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—
   (A) the applicable category of offense committed by the applicable category of defendant as set forth in the . . .
      i) [United States Sentencing Guidelines]—
      ii) [in effect at the time of sentencing]

(5) any pertinent policy statement—
   (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code . . . ; and
   (B) [in effect at the time of sentencing]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

The Court will discuss each factor in turn, aware that some factors overlap to a large extent with other factors, and at times cross-referencing its discussion of one factor when discussing another factor.[8]

*The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense* cuts strongly against early release here. The Court begins its analysis with this factor because it is the most significant factor under the circumstances of this case. As the Government persuasively argues:

> It would best serve Defendant, and all who may be of like mind, to learn that the orders of federal district courts are not to be ignored. Defendant's persistent disdain for lawful authority should not be ignored or rewarded.

---

[8] The Court is also mindful that, in situations such as this one where the original sentencing judge is not the same person as the judge ruling on the compassionate-release motion, "the original sentencing judge's articulation of every § 3553(a) factor on its own may not satisfy the compassionate release decision judge's obligation to explain." *Jones*, 980 F.3d at 1116 n. 25. Accordingly, the Court will thoroughly examine the § 3553(a) factors afresh without reliance on Judge Higgins's original analysis of those factors.

(Doc. No. 151 at 32). The Court agrees. Defendant has repeatedly demonstrated his contempt for the orders of this Court. Not once, but twice, he fled in an attempt to evade this Court's judgment of conviction. Both times he returned not voluntarily but only because he was captured by law enforcement. What is more, when Defendant was finally returned to prison just last year (after more than eighteen years as a fugitive) to finish serving his sentence, Defendant was not prosecuted for his second escape. So Defendant remains serving the original seven-year sentence that he received more than two decades ago. Releasing Defendant early under these circumstances would not merely fail to promote respect for the law, but rather would actively promote (by directly rewarding) *disrespect* for the law. The Court can think of few things that would more justifiably call respect for the law into question than permitting a prisoner to escape, remain at large for almost twenty years, and then be released early (less than one year after being caught and returned to prison) based largely on the fact that the defendant is now serving his sentence at an age older than he would have been had he not escaped in the first place. The Court finds that Defendant serving the remaining approximately seventeen months of his sentence is necessary to properly reflect the seriousness of not just Defendant's original criminal conduct but his multiple efforts to abscond as well, to promote respect for the law, and to provide just punishment for the offense.

*The nature and circumstances of the offense* do not support early release. Most significantly, one of the offenses for which Defendant was convicted was his failure to surrender to serve his original sentence of imprisonment. Defendant was sentenced to twelve months and one day of imprisonment for this offense, to be served consecutive to his original sentence. It would be perverse if Defendant could avoid serving the final portion of his sentence (which includes the additional sentence for failure to surrender) because he absconded and remained out of prison for many years until he developed health problems. Defendant would essentially be

rewarded for absconding the second time by being relieved of his sentence for absconding the first time. In addition, although Defendant characterizes his original fraudulent scheme as a "relatively small-scale fraud" (Doc. No. 145 at 3), the Court cannot agree with that characterization given that it resulted in $12.5 million of loss as determined by a subsequent civil suit against Defendant brought by DirecTV. (*See* Doc. Nos. 112, 151 at 10–11; *see also DirectTV, Inc. v. Lewis*, M.D. Tenn. Case No. 3:98-cv-01100, Doc. No. 83).

*The history and characteristics of the Defendant* likewise do not support early release. As discussed above, Defendant's history of absconding and defying court orders—even above and beyond the fraudulent conduct for which he was originally convicted—gives the Court grave doubt as to whether, if released early, he would comply with conditions of supervised release and otherwise remain a law-abiding citizen.

*The need to protect the public from further crimes of the defendant and the need to afford adequate deterrence to criminal conduct* both cut against early release. Defendant argues that he presents a low risk of recidivism because he "has lived for many years outside of prison without incurring any charges." (Doc. No. 145 at 3). But, of course, the only reason why Defendant "lived . . . outside of prison" during that time was that he escaped from custody, potentially in violation of 18 U.S.C. § 751. Indeed, the Government charged him with a violation of § 751 in federal court in California before dropping the charge upon Defendant's recapture, apparently as a matter of leniency. (*See* Doc. Nos. 151-6, 151-7). So it is not accurate to say that Defendant lived outside of prison "without incurring any charges"—the entire time he lived outside of prison he was an escapee, which resulted in a charge under § 751 (even if it was dismissed as a matter of prosecutorial discretion).

Further, the Court finds that early release would significantly undermine the deterrent value of Defendant's sentence. As already explained, allowing Defendant to avoid part of his sentence (which was imposed in part for absconding) because of his age and health conditions would make a mockery of the justice system, given that Defendant is serving his sentence at this age only because he later absconded again and eluded recapture for more than eighteen years.

*The need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner* is a neutral factor here. The parties dispute whether Defendant is more likely to receive adequate medical care inside or outside of prison. Defendant argues that the Government is not providing needed medical examinations. (Doc. No. 168 at 2–3). The Government argues that Defendant is in fact receiving proper medication (Doc. No. 173 at 1–2) and that Defendant has reported suffering from similar medical issues outside of prison without seeking medical attention (Doc. No. 151 at 30–31). The Court considers this factor disputed and does not find that it tips in favor of either party. The Court, after considering the need for additional educational or vocational training, or other correctional treatment, does not perceive that the factor is materially probative in this particular case.

*The kinds of sentences available* do not support early release. The Court recognizes that it has authority to convert the remainder of Defendant's sentence to "a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment." 18 U.S.C. § 3582(c)(1)(A). Defendant suggests in his Reply that the Court "might consider imposing a supervised-release condition of home confinement." (Doc. No. 168 at 4). However, the Court does not believe that anything other than a custodial sentence is appropriate here: the last time Defendant was allowed out of BOP custody (for three days), the Government did not see him again for eighteen years.

*The Guidelines range under the United States Sentencing Guidelines* also does not support early release. Defendant received his original sentence in 1999 and his additional failure-to-surrender sentence in 2000. Both sentences were rendered under the mandatory Guidelines regime that existed before *United States v. Booker*, 543 U.S. 220 (2005). Accordingly, this is not a case where a defendant received an above-Guidelines sentence that might warrant leniency at a later time. If anything, Defendant's post-sentencing conduct of repeatedly absconding would likely result in a higher Guidelines range, or justify an upward variance, if he were being resentenced today.

*The pertinent policy statement(s)* factor is neutral here. As explained above, U.S.S.G. § 1B1.13 is not "applicable" to this defendant-filed motion. The Government argues that, although § 1B1.13 is not binding, the Court nonetheless may consider it as persuasive authority. (Doc. No. 151 at 35). But the Court has already declined to determine whether "extraordinary and compelling" reasons exist here, instead proceeding directly to the § 3553(a) factors (as it is expressly permitted to do). Any efficiency gains from that procedure would be squandered if the Court were forced to shoehorn consideration of whether there are "extraordinary and compelling" reasons into its analysis of the § 3553(a) factors. Accordingly, the Court will not consider the application of § 1B1.13 at this stage of the analysis,[9] even to the extent it is merely persuasive. The Government contends that "[t]here are no other policy statements that are pertinent" here. (Doc. No. 151 at 35). Defendant likewise does not identify any other pertinent policy statements, and the Court is not aware of any.

*The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct* is also a neutral factor. Defendant points to the fact

---

[9] That is not to say that the Court will not consider circumstances related to the application of § 1B1.13 if they are independently related to the one or more of the § 3553(a) factors.

that his co-defendant—Defendant's then-21-year-old nephew, Brandon Scott—received a sentence of three years of probation after pleading guilty. (Doc. No. 168 at 3). But it is thoroughly unsurprising that Scott received a lesser sentence given that he pleaded guilty whereas Defendant was convicted after a jury trial. *See generally Bordenkircher v. Hayes*, 434 U.S. 357 (1978). This is especially true because Scott cooperated with the Government, "testif[ying] as a government witness at [Defendant's] trial." *Lewis*, 296 F.3d at 491. Scott's relative youth (he was 21 years old at the time of trial) as compared to Defendant (who was approximately 44 years old at the time, and potentially in a position of power over Scott as Scott's uncle) may well have justified greater leniency for Scott. And Defendant does not identify Scott's guideline range, which, if less than Defendant's guideline range, would also help to explain the differing sentences. Moreover, Defendant and Scott have not "been found guilty of similar conduct," *see* § 3553(a)(6)— Defendant received a longer sentence in part because, unlike Scott, Defendant absconded and was convicted of the additional offense of failure to report. It is certainly not an "unwarranted" sentence disparity where the more junior member of a conspiracy receives a lighter sentence after pleading guilty and serving as a cooperating witness, while the more senior member proceeds to trial and then absconds.

*The need to provide restitution* cuts against early release, though not heavily. The Government contends that Defendant was ordered to pay restitution in the amount of $12.5 million, based on the amount of a judgment in a civil suit brought by DirectTV against Defendant for the same conduct underlying his conviction. *See DirectTV, Inc. v. Lewis*, M.D. Tenn. Case No. 3:98-cv-01100, Doc. No. 83. In support of its contention that Defendant was ordered to pay $12.5 million in restitution, the Government cites both the judgment in this case (Doc. No. 73), which stated that the amount of restitution would be determined by the final judgment in DirectTV's civil

suit, and a later Notice of Filing in which the Government filed a certified copy of the DirectTV judgment in this case (Doc. No. 112). However, the Government also has submitted an exhibit showing the record of restitution payments made in this case, which lists the "Current Liability" as $68,646.51. (Doc. No. 151-16). The Court is uncertain of the reason for this inconsistency and finds it unnecessary to definitively resolve the amount of Defendant's restitution obligation at this time. For present purposes, it suffices to say that the record of restitution payments does reflect that Defendant has only ever made two restitution payments, one in the amount of $1,240.75 (in March 2002) and the second in the amount of $25.00 (in April 2003). (*Id.* at 2). Regardless of the total amount of restitution that Defendant owes, the fact that he has only ever made two payments totaling less than $1,300, and that he has made *zero* payments since he absconded from prison almost two decades ago, counsels against early release. In short, although it is true that earlier release can lead to earlier (additional) restitution payments, there is no reason to believe that Defendant's release in this case would lead to additional restitution payments.

On balance, the Court finds that the § 3553(a) factors do not support early release for Defendant. Accordingly, the Motion will be denied.

CONCLUSION

Compassionate release is an extraordinary remedy. *See*, *e.g.*, *United States v. Rizzo*, No. CR 16-20732, 2020 WL 2092648, at *3 (E.D. Mich. May 1, 2020). Here, based on the Court's analysis of the 18 U.S.C. § 3553(a) factors, and in the exercise of the Court's "substantial discretion," *Ruffin*, 978 F.3d at 1005, compassionate release is not warranted—not by a long shot.

For these reasons, the Motion for Compassionate Release (Doc. No. 145) will be **DENIED**.

An appropriate order will be entered.

*Eli Richardson*

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE